# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20546

United States Court of Appeals
Fifth Circuit

**FILED**

September 28, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LAWRENCE T. TYLER,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-774-1

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Lawrence T. Tyler appeals his conviction for conspiracy to commit health care fraud, health care fraud, and money laundering, claiming insufficiency of the evidence. We AFFIRM.

## I. Background

Tyler operated a company called 1866ICPAYDAY.COM, LLC ("ICPAYDAY") that provided durable medical equipment, such as orthotic braces, wheelchairs, and similar equipment, to patients. Tyler controlled the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

day-to-day operations of ICPAYDAY, and identified himself as the owner and manager. In 2007, ICPAYDAY became an approved durable medical equipment provider for Medicare and Medicaid. Sometime thereafter, the Government came to believe that Tyler was submitting fraudulent claims for reimbursement. After an investigation, the Government charged Tyler with one count of conspiracy to commit health care fraud, eight counts of health care fraud, and one count of money laundering.

The indictment alleged that Tyler conspired with Mathew Okorocha, the owner and operator of KC International Medical Supply, Inc. ("KC International"), to submit fraudulent claims to Medicare and Medicaid. Specifically, the indictment alleged that Tyler purchased patient information from a co-conspirator and then used that information to submit false claims to Medicare and Medicaid by representing that a physician had prescribed the use of certain medical equipment for the patients. The indictment also alleged that Okorocha directed an employee to create false orthotic equipment invoices from KC International to support claims submitted by Tyler in response to a Medicare inspection of Tyler's business. Tyler forwarded these false invoices to Medicare. In addition to false claims, the indictment further alleged that Tyler used incorrect billing codes for certain medical equipment to receive higher reimbursements from Medicare and Medicaid. At trial, the Government presented evidence that 86 percent of ICPAYDAY's Medicare and Medicaid reimbursement claims used incorrect billing codes or sought reimbursement for items that were never actually purchased.

The Government voluntarily dismissed one count of health care fraud, and the jury convicted Tyler on the remaining counts. The district court

No. 14-20546

sentenced Tyler to 72 months of imprisonment, three years of supervised release, and restitution.  Tyler timely appealed his conviction.[1]

## II. Discussion

On appeal, Tyler argues that the evidence was insufficient to support his conviction for conspiracy, health care fraud, and money laundering because the Government failed to show that he had the requisite intent or knowledge for each offense.  A preserved sufficiency challenge is reviewed de novo.  *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012).  "This court reviews the record to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir.) (en banc), *cert. denied*, 135 S. Ct. 170 (2014).

A. *Health Care Fraud and Conspiracy to Commit Health Care Fraud*

Tyler first challenges his convictions for health care fraud under 18 U.S.C. § 1347 and conspiracy to commit health care fraud under 18 U.S.C. § 371.  The intent element of a conspiracy charge requires that the Government prove the defendant knew of the conspiracy's unlawful objective and voluntarily agreed to join the conspiracy.  *See United States v. Richard*, 775 F.3d 287, 294 (5th Cir. 2014).  A conspiracy conviction may be based upon circumstantial evidence alone.  *United States v. Delgado*, 668 F.3d 219, 226 (5th Cir. 2012) (quoting *United States v. Garza-Robles*, 627 F.3d 161, 168 (5th Cir. 2010)).  Uncorroborated testimony from an accomplice witness is also sufficient.  *Richard*, 775 F.3d at 294.

To support a conviction for health care fraud in violation of 18 U.S.C. § 1347, the government must prove beyond a reasonable doubt that the

---

[1] Tyler does not appeal his within-guidelines sentence.

3

defendant "knowingly and willfully execute[d], or attempt[ed] to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services . . . ." *United States v. Imo*, 739 F.3d 226, 235–36 (5th Cir. 2014) (quoting 18 U.S.C. § 1347).   Although knowledge and specific intent to defraud are required, actually submitting the fraudulent documentation is not. *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014).

We conclude that the evidence presented at trial was sufficient to support the jury's determination that Tyler had the requisite intent or knowledge for both conspiracy to commit health care fraud and health care fraud.  At trial, one of Tyler's co-conspirators, Birdie Revis, testified that he would send out marketers to find Medicare patients and use the patients' information to fill out blank physician certification statements pre-signed by his cousin, Dr. John Edward Perry.   Revis testified that he sold these statements to Tyler, who paid him $500 per patient in cash or Western Union money orders.  Revis further testified that he arranged for Dr. Perry and Tyler to have a telephone conversation, after which Dr. Perry assured Revis that "[e]verything [was] ok," and Tyler told Revis that he would accept any prescriptions sent by Dr. Perry.

The Government presented evidence related to seven patients on whose behalf Tyler submitted fraudulent claims.  The Government offered Medicare or Medicaid claims filed by ICPAYDAY naming each of these seven patients and indicating that the patient was provided with various types of durable medical equipment.  Testimony established that these patients had either never heard of ICPAYDAY, had never received the equipment shown on the

Medicare or Medicaid claims, or had never seen Dr. Perry, the prescribing doctor listed on the claim forms.

Mark Porter, a health insurance specialist for the Centers for Medicare and Medicaid Services, testified that when he conducted an ad hoc site inspection of ICPAYDAY's office, Tyler was not present and the employee at the office did not have access to the locked room that contained patient files and other documentation. Porter also testified that although he expected to see rigid orthotic products based on what ICPAYDAY had been billing to Medicare, he found only neoprene orthotics in the office. He requested that Tyler fax him certain documentation.

Hervee Kpi, a manager at KC International, testified that a few days after Porter visited ICPAYDAY's office, Tyler had a private meeting with Okarocha, the owner of KC International. Kpi testified that after the meeting, Okarocha asked Kpi to create new KC International invoices for Tyler, and that she did so under Okarocha's direction. Several days later, Tyler asked Kpi to create another set of invoices because Tyler was not satisfied with the price of each item that was put on the prior invoices and also wanted to change the quantity of items reflected on them. Kpi testified that Tyler sat next to her while she created the new invoices, listing items that were never purchased. ICPAYDAY faxed the claims to Porter in connection with the Medicare claims under investigation. Another Medicare investigator testified that when she reviewed the KC International invoices, she noticed that ICPAYDAY's bank accounts did not show corresponding payments for each of the invoices.

Tyler contends that he lacked the necessary mens rea for these convictions because a third party did his billing and he relied on doctors, like Dr. Perry, to determine whether equipment was medically necessary. However, the evidence presented at trial, including the testimony of Revis and Kpi, supports the jury's conclusion that Tyler knowingly conspired with

No. 14-20546

Okarocha to submit fraudulent claims to Medicare and Medicaid and willfully and purposely participated in the scheme.  To the extent Tyler argues that there is conflicting evidence, such as his own testimony, that supports his claim that he lacked the requisite mens rea for conspiracy and health care fraud, the jury was free to believe other witnesses over him.  *United States v. DeRose Indus., Inc.*, 519 F.2d 1066, 1067 (5th Cir. 1975); *see also Grant*, 683 F.3d at 642 ("The jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses.").  Thus, we reject Tyler's sufficiency-of-the-evidence challenge to his convictions for health care fraud and conspiracy to commit health care fraud.

B. *Money Laundering*

Tyler challenges his conviction for money laundering under 18 U.S.C. § 1957, contending that the Government failed to provide sufficient evidence to prove beyond a reasonable doubt that he possessed the requisite intent.

Money laundering consists of three elements: "(1) property valued at more than $10,000 that was derived from a specified unlawful activity, (2) the defendant's engagement in a financial transaction with the property, and (3) the defendant's knowledge that the property was derived from unlawful activity."  *United States v. Fuchs*, 467 F.3d 889, 907 (5th Cir. 2006) (citing *United States v. Rodriguez*, 278 F.3d 486, 490 (5th Cir. 2002)).  The knowledge element requires only proof that the defendant "knew the funds were illicit and engaged in a 'financial transaction' with them regardless."  *United States v. Alaniz*, 726 F.3d 586, 602 n.6 (5th Cir. 2013).

At trial, the Government submitted evidence that Tyler was the sole authorized signatory on a Wachovia bank account and that he withdrew $140,500 from that account in January 2009.  A forensic accountant testified that Tyler used that money to purchase a cashier's check.  The accountant further testified that most of the withdrawn money was derived from Medicare

and Medicaid deposits. As discussed previously, there was sufficient evidence showing Tyler submitted fraudulent claims for reimbursement to Medicare and Medicaid with knowledge that the claims were fraudulent. The primary source of deposits into the bank account were from Medicare and Medicaid reimbursements paid pursuant to ICPAYDAY's submission of fraudulent claims. The evidence thus supports the jury's conclusion that Tyler knew the funds withdrawn from the Wachovia account were derived from illegal activity. *See Alaniz*, 726 F.3d at 602–04. Viewing the evidence in the light most favorable to the Government, we conclude that a rational trier of fact could have found the essential elements of money laundering beyond a reasonable doubt.

AFFIRMED.