# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-50468

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HELENA TANTILLO,

Defendant - Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CR-162

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Helena Tantillo was convicted under 18 U.S.C. § 1001(a)(2) on two counts of making false statements to FBI agents during a public corruption investigation of Dallas County Commissioner John Wiley Price. Tantillo challenges her conviction and sentence on four grounds, arguing that the district court erroneously excluded evidence of her willingness to take a polygraph test, that the district court erroneously instructed the jury on

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

materiality, that the jury convicted her on insufficient evidence, and that her sentence on two counts of making false statements subjects her to double jeopardy. Because none of these challenges is meritorious, we AFFIRM the judgment of the district court.

## I.

At issue in this case is Tantillo's liability for statements made to the FBI during its investigation of a bribery conspiracy that lasted from approximately 2001 to 2011. The FBI had discovered that Commissioner Price repeatedly took favorable actions for the clients of a consultant named Kathy Nealy after Nealy conveyed financial benefits to Commissioner Price. The FBI interviewed Tantillo to learn more about this activity because Tantillo was an executive-level employee of BearingPoint, one of the companies that Commissioner Price had helped after receiving funds from Nealy. The FBI wanted Tantillo to provide information about a series of transactions in 2004 that suggested BearingPoint had given a temporary pay raise to a consultant named Christian Campbell so that he could pay Nealy to bribe Commissioner Price.

FBI agents interviewed Tantillo three times from August 2013 to June 2014. Tantillo made two statements that are relevant to this case. First, she told the FBI that BearingPoint gave Campbell a pay raise to make a contribution to a favorite charity of a Dallas County commissioner who was not under investigation. Second, she told the FBI that she had been reminded of this fact during a phone call with her former boss that took place between her first and second interviews. Tantillo made these statements during the second interview and repeated them during the third.

Tantillo was charged on two counts of making false statements to law enforcement under 18 U.S.C. § 1001(a)(2)—one count for each of the statements discussed above. At trial, the jury heard testimony relevant to each statement. One BearingPoint employee testified that she recalled discussions

about a contribution to a charity associated with the commissioner whom Tantillo named. On the other hand, two BearingPoint employees that Tantillo said had discussed the charitable contribution both testified that they never knew of such a plan. Campbell himself testified that he and Tantillo agreed he would use $7,500 of his temporary pay raise to get Nealy's help influencing Commissioner Price and that the remaining $2,500 was intended to cover the taxes he would owe on the pay raise.

Regarding Tantillo's claim that her former boss reminded her of the reason for Campbell's pay raise over the phone, the jury heard testimony from the FBI agents who interviewed Tantillo that she initially claimed to have called her former boss using the phone in a hotel room in Phoenix. They told her they did not believe she made a long-distance call from the hotel's landline and would try to verify the hotel phone records, and Tantillo eventually said she really made the call from her cell phone. The agents testified that the FBI subpoenaed Tantillo's cell phone records from the relevant time period and that the records did not show any calls between Tantillo and her former boss. The phone records were entered into evidence. Tantillo testified at trial that she misremembered who reminded her of the reason for Campbell's pay raise when she spoke with the FBI.

The jury found Tantillo guilty on both counts of making false statements to law enforcement. Tantillo was sentenced to six months' imprisonment on each count, to be served concurrently and to be followed by three years of supervised release. She was also fined $2,500 per count and ordered to pay a $200 special assessment. Tantillo appealed, challenging an evidentiary ruling, a jury instruction, the sufficiency of the evidence, and the alleged multiplicity of her sentence.

3

No. 16-50468

## II.

We review the sufficiency of the evidence *de novo* because Tantillo preserved the issue. *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011). We conduct this review in light of the jury's "sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses," *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012), and in light of the jury's freedom to "choose among reasonable constructions of the evidence," *United States v. Delgado*, 668 F.3d 219, 225 (5th Cir. 2012). Thus, the evidence is sufficient if, "after viewing all the evidence and inference[s] that may be drawn therefrom in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.*

The elements of an 18 U.S.C. § 1001(a)(2) violation are: "(1) a statement, that is (2) false, (3) and material, (4) made with the requisite specific intent, [and] (5) within the purview of government agency jurisdiction." *United States v. Abrahem*, 678 F.3d 370, 373 (5th Cir. 2012). Tantillo challenges the sufficiency of the evidence as to each element except the actual making of her statements. However, her challenges fail because the evidence is sufficient to allow a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.

## A.

The evidence is sufficient to allow a rational trier of fact to find that Tantillo's statements were false. At best, Tantillo's arguments to the contrary show that a jury could find Campbell's pay raise was intended to facilitate a contribution to the favorite charity of a commissioner other than Commissioner Price if it credited the testimony she proffers, discredited contrary testimony,

No. 16-50468

and drew the inferences that she suggests.[1]  However, the jury was free to evaluate the credibility of the witnesses and to choose among reasonable constructions of the evidence.  *Grant*, 683 F.3d at 642; *Delgado*, 668 F.3d at 225.  The jury heard Campbell testify that he and Tantillo agreed he would pass $7,500 of his pay raise on to Nealy.  It also heard two witnesses deny Tantillo's claim that they discussed plans to make a charitable contribution to another commissioner through Campbell.  The record shows that, consistent with this testimony, Campbell passed $7,500 of his pay raise on to Nealy and did not use it to make a charitable contribution.  This evidence is sufficient for a rational jury to conclude that Tantillo did not tell the truth when she said Campbell's pay raise was intended to enable him to make a charitable contribution to bribe a commissioner other than Commissioner Price.

## B.

The evidence is also sufficient for a rational jury to reject Tantillo's claim that she lacked the requisite intent because any inaccuracies in her statements resulted from faulty memory.  Tantillo argues that her statement about attempting to corrupt a commissioner other than Commissioner Price was a statement against her interests and demonstrates that she made a good-faith effort to remember the reasons for events that had taken place years before.[2] The jury heard Tantillo testify that she actually thought she remembered that

---

[1] None of Tantillo's arguments about falsity pertain to the claim that she was reminded of the reason for Campbell's raise during a phone call with her former boss.  Thus, Tantillo has forfeited any argument that the evidence is insufficient to prove the falsity of her statement regarding the phone call.  *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

[2] Tantillo's claim to have misremembered events years after the fact does not explain why she inaccurately stated that she was reminded of the reason for Campbell's raise during a phone call with her former boss.  This phone call allegedly took place within a few months of the time that she made the statement.  Thus, Tantillo has not adequately briefed any challenge to the jury's finding of specific intent with regard to her statement about the phone call.  *See Scroggins*, 599 F.3d at 446–47.

No. 16-50468

Campbell's pay raise had been intended to facilitate a charitable contribution when she told the FBI that this was the case. On the other hand, as has been discussed above, the jury also heard Campbell's testimony that he and Tantillo did not intend a charitable contribution, heard other witnesses deny having discussed plans for a charitable contribution, and heard that a charitable contribution was not made. In light of this competing evidence, the jury was free not to accept Tantillo's self-serving testimony as credible. *Grant*, 683 F.3d at 642. Thus, the evidence was sufficient to support the jury's finding of specific intent.

## C.

Finally, the evidence shows that Tantillo's arguments regarding materiality and the FBI's jurisdiction over the conduct it was investigating are without merit. According to Tantillo, her 2013 and 2014 statements about transactions that took place in 2004 had to do with conduct outside the statute of limitations. Tantillo argues that the expiration of the statute of limitations placed the conduct outside the FBI's jurisdiction and made her false statement about Campbell's raise immaterial to "the official decision" of whether to arrest or charge anyone involved.[3] However, the statute of limitations had not expired at the time Tantillo made her statements: Although Tantillo's statement had to do with a pay raise in 2004, that pay raise was part of a conspiracy that lasted until around 2011, and the statute of limitations for conspiracy is five years. *See* 18 U.S.C. § 3282(a). Tantillo argues that any conspiracy was complete once Commissioner Price received BearingPoint's bribe and gave BearingPoint the favorable treatment it sought. However, the

---

[3] Tantillo has not adequately briefed any challenge to the jury's finding of materiality and jurisdiction with respect to her statement about the phone call with her former boss. Although she asserts that "a false 'memory trigger'" is an improper basis for a federal felony conviction, her brief does not support this proposition with legal authority and argument. *See Scroggins*, 599 F.3d at 446–47.

No. 16-50468

record shows that the FBI was investigating the 2004 transactions as part of a broader conspiracy that lasted until around 2011 and shows that Campbell was prosecuted for conspiracy based on his role in those transactions. We therefore reject Tantillo's argument that the alleged expiration of the statute of limitations made her statements immaterial and placed the conduct of which she spoke outside the FBI's jurisdiction.[4]

## III.

We review the district court's exclusion of evidence for abuse of discretion. *United States v. Alaniz,* 726 F.3d 586, 606 (5th Cir. 2013). Even if a district court abuses its discretion, we will reverse only if the exclusion of evidence affected the outcome of the case. *United States v. Kay*, 513 F.3d 432, 457 (5th Cir. 2007). Tantillo argues that the district court erred by excluding testimony about her willingness to take a polygraph test that allegedly would have corroborated her claim that she believed she was telling the truth even if her statements turned out to have been inaccurate. However, she has not shown that the district court's Rule 403 analysis was an abuse of discretion. Nor has she shown that the excluded testimony would have overcome the evidence from which the jury concluded, notwithstanding her arguments to the contrary, that she intentionally misled the FBI. Thus, the district court's exclusion of testimony that Tantillo was willing to take a polygraph test does not constitute reversible error.

## IV.

We review jury instructions for plain error where, as here, no objection was made at trial. *United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006); *see also* Fed. R. Crim. P. 30(d). Accordingly, this court has discretion to correct

---

[4] Because the statute of limitations had not expired, we do not decide what impact the expiration of the statute of limitations would have had.

an error that "is plain, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Jimenez v. Wood Cty.*, 660 F.3d 841, 845 (5th Cir. 2011). An error is plain if it is "clear or obvious" at the time of the appeal. *United States v. Escalante-Reyes*, 689 F.3d 415, 423, 440 (5th Cir. 2012). An error affects substantial rights if it affects the outcome of the court proceedings. *Id.* at 424.

Tantillo argues that the district court's jury instruction erroneously defined the materiality element of an 18 U.S.C. § 1001(a)(2) violation. According to the jury instruction, "A statement is 'material' if it has a natural tendency to influence, or is capable of influencing, a decision of the Federal Bureau of Investigation." According to Tantillo, a statement is only material if it has a natural tendency to influence "the official decision" of the FBI, which she defines as whether to arrest or charge Price, Nealy, Campbell, Tantillo, or a fifth individual for bribery, conspiracy, money laundering, or tax evasion.[5] Tantillo bases her argument on a Supreme Court decision that false statements are only actionable under 8 U.S.C. § 1451(a) if they are material to "the official decision" of the government. *See Kungys v. United States*, 485 U.S. 759, 771 (1988).[6]

The Court's use of the phrase "the official decision" in *Kungys* is insufficient to establish that the district court committed plain error by using our Pattern Jury Instructions. The Court's focus on one official decision in

---

[5] Thus, Tantillo takes "the official decision" to refer to forty decisions: eight decisions (whether to arrest and whether to charge for any of four crimes) for each of five individuals.

[6] Tantillo also notes that *Escobar* calls materiality a rigorous requirement and holds that violation of a legal obligation can only be material for purposes of the False Claims Act if it is material to the government's decision to make a payment. *See Universal Health Servs., Inc. v. United States, ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016). This is unsurprising as the False Claims Act applies to false claims for government payment, and it does nothing to show that a statement is material for purposes of 18 U.S.C. § 1001(a)(2) only if it pertains to the FBI's decisions as to who should be arrested or charged with what crimes.

No. 16-50468

*Kungys* is unsurprising given the limited scope of the statute under which the case arose.[7]   However, Tantillo's case arises under 18 U.S.C. § 1001(a)(2), which does not limit the materiality analysis to a specific agency decision.  That the narrowness of the inquiry in *Kungys* arises from statutory limitations rather than the definition of materiality is further supported by the case's holding that a statement is material if it has "a natural tendency to influence the decisions of the [agency]."  *Kungys*, 485 U.S. at 772.  The instruction on materiality stated the law correctly and provides no basis for reversal.[8]

## V.

"Whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed."  *United States v. Guzman*, 781 F.2d 428, 432 (5th Cir. 1986).  Under this test, a defendant is not subjected to double jeopardy "when conviction under one count requires proof of an additional fact that the other count does not require."  *Id.*  Although Tantillo forfeited any double-jeopardy challenge to the multiplicity of her indictment by failing to raise it before trial as required by Federal Rule of Criminal Procedure 12(b), we liberally construe her brief to include a double-jeopardy challenge to the multiplicity of her sentence.  *See United States v. Galvan*, 949 F.2d 777, 781 (5th Cir. 1991) (permitting a challenge to the multiplicity of a sentence to be raised for the first time on appeal).

Tantillo was sentenced on two counts of making false statements to law enforcement.   Each count required different evidence to show that the

---

[7] *Kungys* arose under 8 U.S.C. § 1451(a), which provides for revocation of an order and certificate of naturalization if it was procured by concealment or misrepresentation of a material fact.  Therefore, the Court focused exclusively on whether the false statements tended to affect the decision to naturalize the applicant.  *Id.* at 771–73.

[8] Even if the instruction misstated the law and its error was plain, Tantillo has not shown that any error would have affected the outcome of the proceedings.

No. 16-50468

statement was made and to show that the statement was false.  Thus, each count involved a separate and distinct act, and punishment for both acts does not constitute double-jeopardy.  *See Guzman,* 781 F.2d at 432.  Tantillo's argument that her two statements were substantially the same and were made during the course of a single transaction is unavailing.  The statements were distinct and were repeated in two separate interviews.  Even if that were not the case, Tantillo's argument would only show that her case is like *Guzman,* which held that presenting the same false signature on two documents in a single transaction constituted two separate offenses.  *Id.* at 433.  Thus, Tantillo's double-jeopardy argument fails.

## VI.

For the reasons stated above, Tantillo's arguments are without merit.  Accordingly, the judgment of the district court is AFFIRMED.